### CITY OF HAZLEHURST *v.* SHOWS.

#### [74 South. 122, Division B.]

MUNICIPAL CORPORATIONS.  *Defects in streets.  Frightening horse.  Notice of defect.*

> Where in a suit against a city for the drowning of a horse which while being driven along a street over an embankment constituting the dam of a lake, shied at a boiler on the slope of the dam, and fell into the lake, there was no evidence that the city had any knowledge of the presence of the boiler or that it was within the limits of the street, but it did appear that the boiler, though left there some time before by an individual, had been so covered with weeds and rubbish as to be unnoticeable until the weeds were burned away a day or two before the accident. In such case no liability on the part of the city was shown and a peremptory instruction for the city should have been given.

APPEAL from the circuit court of Copiah county.

HON. J. B. HOLDEN, Judge.

Suit by P. M. Shows against the City of Hazlehurst. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*H. J. Wilson,* for appellant.

*M. S. McNeil,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

P. M. Shows filed suit in a justice of the peace court against the city of Hazlehurst on the following account:

"Account sued on.  City of Hazlehurst, Dr., to P. M. Shows; To one horse drowned in Lake Hazle—one hundred and fifty dollars."

The record shows that a horse being driven by P. M. Shows was drowned in Lake Hazle, a lake situated in the corporate limits of Hazlehurst and belonging to the city. Shows was driving along a highway over an embankment constituting the dam of the lake, when his horse

shied, made a plunge down the embankment, which sloped into the water, and was there drowned. The dam or roadway was twenty-two feet wide at the crown or face, and from seventy to one hundred feet at the base. It seems that a boiler was lying against the bottom of this dam or road embankment, which was within the city limits of Hazlehurst, and had been for some six or seven months, but seems to have been covered with rubbish, trash, and sage, to such an extent that it had not been noticeable, so far as the record shows, by any person traveling the highway until a day or two before the accident in question, when the grass, straw, and rubbish was burned and left the boiler exposed. It seems that the boiler had been moved by a private party from another point in the city because it was an unsightly object, offensive to the æsthetic sense of the ladies of the city. The party moving the boiler along this highway testified that his wagon broke down at the point opposite where the boiler was lying, and the boiler rolled off the wagon and down the embankment, which the proofs shows was somewhere between four and twelve feet below the surface of the road, and was left there by this party. The boiler was originally moved from a point in the city at the request of the street commissioner, but the party was not directed where to carry the boiler, and there is no proof in the record that the location of the boiler was actually known to the city authorities, nor is there any proof that the boiler as situated prior to the burning had any tendency whatever to frighten horses of ordinary gentleness. There is no proof in the record that after the burning the location and condition of the boiler was ever brought to the attention of the city, but, on the contrary, the street commissioner testifies positively that he had no knowledge of the boiler being where it was prior to the accident. The width of the street owned by the city is not shown, but prior to the extension of the city limits the road had been laid out and constructed by the board of supervisors; and our statute provides

the width of a country right of way for a highway as thirty feet. It does not appear satisfactorily in the record that the boiler was within this right of way. The plaintiff shows that he was going along the road at a lively trot, in a buggy, and that the horse made two plunges before he could get his lines up, and that after he got his lines the horse was too far down the embankment to turn him and check him. It appears that the slope on the lake side of the road was a gradual slope, and that in constructing the dam the teams and wagons hauled dirt up the embankment to the surface of the road, but that the embankment was too steep for a buggy to go up or down, but a horse could be ridden up and down it with safety. It was also contended by the plaintiff that the city should have had a fence between the highway and the road to prevent stock running into the lake.. The plaintiff testifies that he had been along the road numbers of times prior to the accident, and that his horse had never noticed the boiler, and that he himself had never noticed it prior to the burning of the rubbish. The testimony of numerous witnesses is to the same effect, and it seems that no complaint or trouble had ever arisen on account of the situation of the boiler.

Under the facts shown in this record, we are of the opinion that there was no liability upon the city for the injury; and, having reached this conclusion, it is unnecessary to consider any assignment except the refusal of the peremptory instruction requested by the city and refused by the court.

The judgment is accordingly reversed, and judgment entered here for the city.

*Reversed, and judgment here.*